United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Ivan Aguilera, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 19-24829-Civ-Scola |
| Michael R. Pompeo and others, | ) |
| Defendants. | ) |

## Order On Motion for Summary Judgment

This matter is before the Court upon the Plaintiff Ivan Aguilera's motion for summary judgment. For the reasons set forth below, the Court **grants** the Plaintiff's motion (**ECF No. 46**.)

### 1. Background

In this declaratory judgment action, the Plaintiff, Ivan Aguilera, seeks a declaration from the Court establishing that he is a United States Citizen, pursuant to 8 U.S.C. § 1503 and 28 U.S.C. § 2201. This dispute spins out of the Plaintiff's 2017 application to the United States Department of State ("DoS") to renew his passport, which had previously been issued by DoS in 1989, 1996, 2002, and 2007 based on a Texas birth certificate allegedly showing the Plaintiff was born in El Paso County, Texas. Upon review of his application, DoS Special Agents informed Mr. Aguilera that they had come into possession of a Mexican birth certificate relating to the Plaintiff, and on the basis that the Mexican birth certificate apparently showed that Mr. Aguilera was born in Mexico rather than Texas, DoS declined to issue Mr. Aguilera a new passport.

Ivan Aguilera is the son of Alberto Aguilera Valdez, a renowned singer and songwriter of Latin American music. Alberto performed under the stage name Juan Gabriel and sold over 100 million albums during his forty-year plus career. Alberto passed away in 2016. The Plaintiff stated in an affidavit that he lived his entire life believing he was born in Texas and never received information from his father; his biological mother, Marisela Roman; or his adoptive mother, Laura Elena Salas Campa, indicating otherwise. Accordingly, the Plaintiff claims his Texas birth certificate, which indicates he was born in El Paso County, Texas is legitimate, and the competing Mexican birth certificate relied upon by the government is a forgery.

Mr. Aguilera's Texas birth certificate states that he was born at 7315 Highway 28, Canutillo, El Paso County, Texas on January 1, 1988 at 11:30

a.m. (ECF No. 43-2; ECF No. 45 at ¶ 10.) The Texas birth certificate further indicates that his father is Alberto Aguilera and that his mother is Marisela Roman. (ECF No. 45, 49 at ¶ 11-12.) The birth certificate was witnessed by Socorro Vasquez and was registered with the local registrar on June 22, 1988. (ECF No. 43-2.) Like the Texas birth certificate, the competing Mexican birth certificate also indicates that Mr. Aguilera was born at January 1, 1988 at 11:30 a.m. While this birth certificate indicates that Alberto Aguilera is the Plaintiff's father, the birth certificate instead lists Laura Elena Salas Campa as the Plaintiff's mother. A second difference between the birth certificates pertains to the witnessing of the documents. While the Texas birth certificate was witnessed by Socorro Vasquez, the Mexican birth certificate was witnessed by Raul Iragorri Rivero and Osvaldo Manuel Quintanar Sanchez. The Plaintiff argues, however, that these witnesses could not have witnessed the Mexican birth certificate because they did not meet his father until almost a year after his birth in 1989. (Rivero Interview, ECF No. 57-1, at 6 (Q: "You know Alberto in '88?" A: "No. No, impossible. My daughter was less than one year old . . . My daughter was born on February 17, of '89, and a few days after I met Juan Gabriel"); *see also* Sanchez Interview, ECF No. 57-2 at 2 (Q: "But you tell me that in the year '88 you didn't know Juan Gabriel, right?" A: "No, no. No., because I started [in] '89, or late '89 with them. So, it is not possible that, that it had been in '88.").) The Mexican birth certificate was registered with the local registrar on January 7, 1988, six days after the Plaintiff's birth. (*See generally*, ECF No. 43-2; ECF No. 60-1 (English translation).) Mr. Aguilera claims because of his father's notoriety, he has been subjected to numerous lawsuits by individuals claiming to be heirs, states he has been extorted, and argues that at least one individual has relied upon the disputed Mexican birth certificate in one such lawsuit. (ECF Nos. 45, 49 at ¶¶ 40-42, 47.)

The Plaintiff points to several facts in support of his claim that the Texas birth certificate is legitimate, and the Mexican birth certificate is a forgery. First, the Plaintiff notes that he has repeatedly been issued passports by DoS. On November 16, 1988 his father applied for a United States passport on his behalf. The passport application provided a United States address for the Plaintiff and listed Alberto as his father and Marisela Roman as his mother. After initial processing, DoS requested additional information to process the Plaintiff's passport application, including medical records for the Plaintiff's mother as well as records from the physician who attended to the Plaintiff and his mother after his birth. In response to DoS's request, the Plaintiff provided his mother's medical records, as well as a March 10, 1989 letter from Raul Rivera, M.D., an El Paso, Texas physician which stated "this is certification that I was summoned to examine the mother and the child on January 2,

1988. Her address was 7315 Hi[gh]way 28 in Canutillo, Texas. . . . I found the mother on a post-partum state with no complications. Examination of the infant also revealed no significant abnormality." (ECF No. 43-5.) Dr. Rivera died in 2016, before the Mexican birth certificate was discovered. (ECF No. 58, at 7.) Dr. Rivera's letter, which was received by DoS, appears to contain a handwritten marking added by the government stating "verified," accompanied by a handwritten date of April 14, 1989. DoS ultimately issued Mr. Aguilera a passport in 1989, and reissued his passport in 1996, 2002, and 2007. In 2008, Mr. Aguilera obtained a Mexican passport by virtue of his father's Mexican citizenship, which states that Mr. Aguilera was born in El Paso, Texas. (*See* ECF No. 43-25, *see generally* ECF No. 45, 46 at ¶ 16-19, 21-22, 35-38.)

Second, in 1989, the Plaintiff's biological parents participated in court proceedings in Texas to terminate the parental rights of the Plaintiff's biological mother, Marisela Roman. The initial petition, filed in January 1989 noted that Alberto and Marisela Roman live at 7315 Highway 28, Canutillo, El Paso County, Texas and states that the Plaintiff was born in Canutillo, El Paso County, Texas. (ECF No. 43-15, at 1.) In the lawsuit, Alberto contemporaneously affirmed that the Plaintiff was "born to Marisela Roman in Canutillo, El Paso County, Texas" and Marisela Roman confirmed the same in various filings. (ECF No. 43-15 at 4-7.) As part of these proceedings, the court found that the Plaintiff's birthplace was Canutillo, El Paso County, Texas. (ECF No. 43-15 at 8-9.) Ultimately, Marisela Roman's parental rights over the Plaintiff were terminated in June 1989. (ECF No. 43-15 at 14-15.) While the government does not dispute these proceedings occurred, they do dispute the sworn statements made by the Plaintiff's parents to the extent they conflict with the Mexican birth certificate. (*See* ECF No. 49 at ¶¶ 24-31.)

Third, in September 1990, Laura Elena Salas Campa, the individual listed as the Plaintiff's mother on his Mexican birth certificate adopted Mr. Aguilera. The parties agree that, consistent with Texas law, a new birth certificate for the Plaintiff was issued, removing Marisela Roman as his mother and listing Laura Elena Salas Campa in her place. (ECF Nos. 45, 49 at ¶¶ 32-34.) In 2017, in connection with the Plaintiff's battle to prove the legitimacy of his Texas birth certificate and renew his passport, the Plaintiff and his adoptive mother underwent DNA testing, which conclusively established that Ms. Salas Campa is not Mr. Aguilera's biological mother. (ECF No. 43-14 at 5 ("Probability of Maternity: 0%").) The government does not dispute that Ms. Laura Salas is not Mr. Aguilera's biological mother but does dispute any insinuation that this scientific finding proves the legitimacy of the Texas birth certificate.

Fourth, after DoS received the Plaintiff's Mexican birth certificate, DoS contacted the Texas Department of State Health Services so his Texas birth records could be "flagged." Around the same time, Ivan requested a certified copy of his Texas birth certificate to provide to DoS in order to prove he was born in Texas. The Texas Department of State Health Services informed Mr. Aguilera that because "the Department of State reported that Ivan Gabriel Aguilera has a Mexican Birth Record" that the state would "refuse to issue the requested copy of the birth record." (ECF No. 43-19 at 1.) Mr. Aguilera appealed the Texas agency's decision and on February 1, 2018 an administrative law judge, after considering the conflicting birth certificates, Mr. Aguilera's Mexican passport, the above-mentioned DNA test, and the parental rights proceedings, found that based mainly on the parental rights proceedings "the Texas Certificate of Birth is the true record" such that a "certified copy of the Texas Certificate of Birth should be issued to Ivan Aguilera." (ECF No. 43-20 at 5-10.) Accordingly, Mr. Aguilera was issued a certified copy of his birth certificate on February 9, 2018. (*See* ECF No. 45, 49 at ¶ 43-45, 48-49.) Despite the findings of the Texas administrative law judge that Mr. Aguilera's Texas birth certificate is the legitimate birth certificate, DoS has nonetheless refused to issue Mr. Aguilera a new passport, arguing that Mr. Aguilera's Mexican birth certificate proves he is not a United States citizen.

Finally, the Plaintiff adds that he has lived his entire life in the United States. He was baptized here, received schooling here, pays taxes here, married his wife who is a United States citizen here, and has two children who are United States citizens. Indeed, it appears from 1989 through the instant dispute that the government, like Mr. Aguilera, never questioned that Mr. Aguilera was a United States citizen. (ECF No. 45 at ¶¶ 58-74.)

## 2. Legal Standard

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina,* 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial . . . [o]nly when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(c) "requires the nonmoving party to go beyond

the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).  Thus, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue of material fact remains.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).  "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir.2004).  "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260.  A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied.  *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007).

At the summary judgment stage, "the district court shall consider all evidence in the record when reviewing a motion for summary judgment- pleadings, depositions, interrogatories, affidavits, etc.-and can only grant summary judgment if *everything* in the record demonstrates no genuine issues of material fact exists." *Tippens v. Celotex Corp.*, 805 F.2d 949, 952 (11th Cir. 1986) (emphasis in original) (internal citations omitted). However, "[t]he general rule is that inadmissible hearsay cannot be considered" unless it can "be reduced to admissible evidence at trial or reduced to admissible form." *Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999) (internal citations omitted).

### B. 8 U.S.C. § 1503

Pursuant to 8 U.S.C. § 1503, when any person in the United States claims a right or privilege as a United States citizen, and is denied such right, that person "may institute an action under the provisions of section 2201 of title 28" seeking a declaratory judgment as to their citizenship. 8 U.S.C. § 1503(a). Lawsuits brought under 8 U.S.C. § 1503(a) are not "for judicial review" of an agency's action, but rather are for *de novo* "judicial determination

of the status of the Plaintiff as a United States national." *Richards v. Sec'y of State*, 752 F.2d 1413, 1417 (9th Cir. 1985); *see also Vance v. Terrazas*, 444 U.S. 252, 256 (1980). Accordingly, while DoS regulations relating to proof of citizenship are instructive, they are not controlling upon the Court. *Ramirez v. Clinton*, Civil No. 08-5770(DSD/JSM), 2011 WL 2838173, at *4 (D. Minn. July 18, 2011). A plaintiff bears the burden of proving their citizenship by a preponderance of the evidence. *Beltran v. Rivera*, No. 10-cv-24288, 2012 WL 2675477, at *3 n.1 (S.D. Fla. July 6, 2012) (Moore, J.). Put another way, the Plaintiff must show the trier of fact that "the existence of a fact is more probable than its nonexistence." *United States v. Trainor*, 277 F. Supp. 2d 1278, 1286 (S.D. Fla. 2003) (Jordan, J.) (quoting *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997)).

### 3. Analysis

In their opposition to the Plaintiff's motion for summary judgment, the Defendant argues that summary judgment is inappropriate due to the existence of allegedly genuine disputes around several facts the government claims are material. Specifically, the Defendant argues the following facts preclude summary judgment: (1) the existence of the dueling Mexican and Texas birth certificates; (2) inconsistent information as to Marisela Roman's age at the time of the Plaintiff's birth on the Texas birth certificate; (3) that the Mexican birth certificate was registered earlier in time than the Texas birth certificate; (4) the authenticity of Marisela Roman's medical records; and (5) the reliability of the letter written by Dr. Raul Rivera.

Taking the facts in the light most favorable to the Defendant, the Court finds that there is no genuine issue of material fact precluding summary judgment. The record is replete with a mountain of compelling evidence compiled by the Plaintiff suggesting his Texas birth certificate is legitimate and the Mexican birth certificate is a forgery. In the view of the Court, the government has failed to meaningfully address this mountain of evidence, instead pointing continually to the existence of the Mexican birth certificate as if that is conclusive proof of the Plaintiff's place of birth.

First, the Court notes that the Mexican government itself, when issuing Mr. Aguilera a passport, stated in an official government document that Mr. Aguilera was born in El Paso, Texas. The Defendant fails to explain why the Mexican government would state in an official government document that Mr. Aguilera's place of birth was El Paso, Texas if the Mexican government also had records showing that the Plaintiff was born in Mexico.

Second, the government fails to meaningfully engage with the Texas administrative law judge's February 2018 decision, considering much of the

same evidence presently before the Court, where the court found the Texas birth certificate is "the true record" pertaining to the Plaintiff's birth. While the government argues to the Court that the Court need not give that ruling "preclusive effect" the government has given the Court no compelling reason *not* to credit the findings of the Texas administrative law judge. Regardless of the government's position, the Court's decision does not rest on the Texas administrative law judge's decision.

Third, the government fails to counter the argument that this Court should find persuasive to the district court of El Paso, Texas's findings during the 1989 parental rights proceedings. In its decree of legitimation, the Court clearly stated "[t]he Court finds that the following child is subject of this suit: NAME: Ivan Gabriel Aguilera . . . BIRTHPLACE: Canutillo, El Paso County, Texas." (ECF No. 43-15, at 8.) The Defendant argues this Court should not credit the Texas court's findings because the proceedings "did not require a specific finding of the Plaintiff's place of birth." (ECF No. 50, at 11 n.13.) Whether or not this finding was operative to the parental rights proceedings, the court made this finding nonetheless and the Texas administrative law judge explained in her order why this finding was persuasive. Indeed, the parental rights proceedings were key to the administrative law judge's February 2018 ruling as the administrative law judge stated that Marisela Roman's statements concerning the Plaintiff's place of birth "meet the evidentiary burden of clear and convincing," were never amended, were given freely and voluntarily, and were based on Marisela Roman's personal knowledge.

Next, the government fails to contend with the DNA test submitted by the Plaintiff confirming that there is 0% probability that Laura Elena Salas Campa is his birth mother. This test further undermines the legitimacy of the Mexican birth certificate. It is notable that a birth certificate filed six days after the Plaintiff's birth states that Ms. Salas Campa is his mother, when that could not have been the case. The government has not introduced any evidence to suggest the Mexican birth certificate was amended as the Texas birth certificate was to reflect Ms. Salas Campa's status as the Plaintiff's adoptive mother. The government similarly fails to engage with the baptismal records, immunization records, education history, and the like which contribute to the significant evidence provided by the Plaintiff that he is a United States Citizen.

Whether summary judgment was appropriate in this matter was a close call, however, the Court finds that, upon review of the entire record and making all inferences in favor the government, that a rational trier of fact could not find the Mexican birth certificate is legitimate and the Texas birth certificate is a forgery. Therefore, there is no *genuine* issue of material fact preventing the Court from granting summary judgment in this matter. The

Court finds the prior court proceedings, the Plaintiff's Mexican passport, the DNA testing, and other ancillary documents provided by the Plaintiff, taken together, prevent a rational trier of fact from finding in favor of the government.

As a final matter, while the Court finds the statements of Raul Iragorri Rivero and Osvaldo Manuel Quintanar Sanchez, the purported witnesses to the Mexican birth certificate, to be persuasive, it is inappropriate for the Court to consider these statements on summary judgment. Courts may consider hearsay at summary judgment, only if that statement would be admissible at trial for some purpose. *Macuba*, 193 F.3d at 1322-23. The Plaintiff provided Mr. Rivero and Mr. Sanchez's statements to the Court not as sworn affidavits or as part of a deposition transcript, but instead provided what appear to be unofficial translated transcripts of YouTube clips as Exhibits to its statement of facts, together with a link to each YouTube video. (*See* ECF No. 57, at ¶ 76.) The government objected to the Court considering these statements on the grounds that they constitute impermissible hearsay as they are being introduced for the truth of the matter asserted. (ECF No. 49, at ¶ 47.) The Plaintiff failed to articulate a response to the Plaintiff's objection that these statements are hearsay and therefore the Court finds it cannot properly consider these statements at this stage of the litigation. Nonetheless, as stated above, the Court finds summary judgment in favor of the Plaintiff is appropriate even without consideration of these statements.

4. **Conclusion**

For the reasons stated above the Court **grants** the Plaintiff Ivan Aguilera's motion for summary judgment (**ECF No. 46**). The Clerk is directed to **close** this case. Any pending motions, if any, are **denied as moot**.

**Done and ordered** in chambers in Miami, Florida on January 27, 2021.

_____
Robert N. Scola, Jr.
United States District Judge